# EXHIBIT 1



# MASTER SERVICES AGREEMENT

Thank you for your interest in the products and services of DigiCert. This Master Services Agreement, together with any appendices, addenda, Order Forms, schedules, and other terms referenced herein (collectively, the "**Agreement**"), is between you and the applicable DigiCert Contracting Party defined in Section 1 ("**DigiCert**") and governs your use of DigiCert's products and services presented in connection with this Agreement. The Service Specific Terms are incorporated by reference into this Agreement. If Customer purchases QTSP Services, Customer understands that any QTSP Services are provided by the Affiliate QTSP of DigiCert in accordance with the terms of this Agreement.

By accessing or using DigiCert's Services, by electronically accepting this Agreement via DigiCert's online services, or by mutually agreeing to an Order Form with DigiCert in the manner specified in Section 2.1 below and which Order Form references this Agreement, Customer hereby accepts this Agreement as it relates to Customer's use of the Services. If Customer does not agree to the terms of this Agreement (or you do not have authority to enter into this Agreement on behalf of Customer), then Customer may not purchase or use any DigiCert Service. This Agreement is effective as of the date Customer first accepted this Agreement (the "**Effective Date**").

WHEREAS, DigiCert is a software company and trusted third-party certification authority that provides digital trust solutions, including digital certificates ("**Certificates**") and other trust products, software, and services (collectively with the Certificates, the "**Services**");

WHEREAS, as part of the Services, DigiCert operates account management interfaces, portals and related APIs to facilitate the management of Services provided by DigiCert (each, a "**Portal**"); and

WHEREAS, Customer wishes to purchase, and DigiCert wishes to provide, one or more Services pursuant to the terms of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants contained herein and good and valuable consideration which is hereby acknowledged, DigiCert and Customer hereby agree as follows:

**1.      Definitions.** Capitalized terms used in this Agreement but not defined herein have the meanings set forth below.

1.1.     "**Affiliate**" means any entity that directly or indirectly controls, is controlled by, or is under common control with a party to this Agreement.

1.2.     "**Customer**" means you and any entity, business, or individual on whose behalf you are accessing or using Services.

1.3.     "**Customer Content**" means any data, information and other content transmitted by Customer via the Services to DigiCert.

1.4.     "**DigiCert Contracting Party**" means (i) DigiCert, Inc., a Utah corporation, if Customer's billing address is located in the United States, (ii) DigiCert Ireland Limited, if Customer's billing address is located in any country other than the United States or Japan, and (iii) DigiCert Japan G.K., if Customer's billing address is located in Japan. If Customer changes its billing address to a different country, then Customer agrees that this Agreement is assigned to the corresponding DigiCert Contracting Party without further action required by either party.

1.5.     "**Documentation**" means the online documentation and user instructions published by DigiCert to end users on DigiCert's website, such as docs.digicert.com, as may be updated by DigiCert from time to time.

1.6.     "**Feedback**" means all suggestions, comments, opinions, code, input, ideas, reports, information, know-how or other feedback provided by Customer (whether in oral, electronic, or written form) to DigiCert in connection with Customer's use of the Services. For purposes of this Agreement, Feedback will not be treated as Confidential Information or as a trade secret.

1.7.     "**Legal Repository**" means the repository of legal documents applicable to the Services at https://www.digicert.com/legal-repository/ or https://www.quovadisglobal.com/repository/ (as applicable for QTSP Services, and as updated from time to time).

1.8.     "**On-Premises Software**" means any software included in the Services that is made available by DigiCert to Customer for installation on hardware, equipment or devices that are owned or controlled by Customer or Customer's personnel, including any updates thereto. For clarity, the On-Premises Software is part of the Services.

1.9.     "**Portal API**" means the portion of the Portal that constitutes an application programming interface and that facilitates the integration of the Portal with Customer's internal systems, as such application programming interface may be made available by DigiCert under this Agreement.

1.10.    "**Procuring Party**" means a legal entity or business authorized to provide the Services to a subscriber.

1.11.    "**QTSP**" has the meaning set forth in the Certificate Terms of Use.

1.12.    "**QTSP Services**" means Services issued by DigiCert's QTSP (whether acting in its capacity as QTSP or otherwise) or the QTSP of DigiCert's Affiliates.

1.13.    "**Service Specific Terms**" mean additional terms specific to certain Services as set forth at www.digicert.com/service-specific-terms, which are incorporated herein to the extent applicable to any specific Services procured by Customer hereunder (which includes the Certificate Terms of Use with respect to Customer's use of any Certificates).

1.14.    "**Third-Party Content**" means information, data, technology, or materials made available to Customer by any third party that Customer licenses and adds to the Services or directs DigiCert to install in connection with the Services. Third-Party Content includes but is not limited to Third-Party Extensions, web-based or offline software applications, data service, or content that is provided by third parties.

**2.     Order Forms; Portal.**

2.1.    <u>Order Forms</u>. Customer may purchase specific Services from DigiCert by entering into one or more mutually agreed upon quotes, purchase schedules, purchase orders, or order forms (whether online or electronic) that set forth the specific Services being procured by Customer under this Agreement, the term when each such Service is to be provided by DigiCert (the "**Service Term**") and the related payment terms for such Service (each, an "**Order Form**"). Order Forms are considered "mutually agreed upon" either (i) when executed by both parties in writing, (ii) when Customer affirms its electronic acceptance of an Order Form that DigiCert has presented to Customer via electronic means (e.g., at https://www.digicert.com/order), or (iii) when DigiCert presents Customer with an Order Form and Customer affirms its acceptance by issuing a purchase order. Customer and DigiCert acknowledge and agree that each Order Form will be governed by and incorporated by reference into the terms of this Agreement.

2.2.    <u>Portal; Portal API</u>. Subject to Customer's compliance with the terms and conditions of this Agreement, DigiCert hereby grants Customer permission, during the term of this Agreement, to use the Portal (if, and in the form made available by DigiCert to Customer) to manage Services to the extent permitted in the Portal. Further, subject to Customer's compliance with this Agreement, if Customer has been granted access to the Portal API

by DigiCert, then DigiCert hereby grants to Customer a non-exclusive, non-transferable, non-sublicensable, revocable, limited license during the term of this Agreement to install, use and make calls to and from such Portal API solely for the purpose of facilitating Customer's use of the Portal (and its tools and functionalities) directly from Customer's internal systems. DigiCert may throttle any access to the Portal or Portal API if DigiCert believes a system has initiated excessive connections to DigiCert's Portals or Portal API or as DigiCert otherwise deems it necessary to protect DigiCert's technology systems. DigiCert reserves the right to block an IP address that has been used to initiate connections that are not related to normal use of services, or as DigiCert otherwise deems it necessary to protect DigiCert's technology systems. Examples of non-normal use connections include, but are not limited to, vulnerability or load/performance scans.

2.3.    Portal Accounts. In connection with certain applicable Services, DigiCert will provide the Customer with accounts to access and use the Portal (the "**Portal Accounts**"). Customer must maintain security over its Portal Accounts. Customer assumes liability for any use of its Portal Accounts by individuals obtaining access credentials from Customer.

2.4.    Vendor Entities. DigiCert's Affiliates may exercise any right or perform any obligation under this Agreement. For clarity, a DigiCert Affiliate may (i) exercise DigiCert's billing rights and obligations, and (ii) execute Order Forms with Customer. If Customer purchases QTSP Services, the QTSP will be responsible to perform the QTSP Services.

2.5.    Purchases for Resale. If Customer purchases Services not for itself, its Affiliates, or their employees or contractors but for resale, then Customer agrees that such purchases will be governed by the terms of the Master Partner Agreement, available at https://www.digicert.com/master-partner-agreement (as updated from time to time), which terms are incorporated herein by reference.

2.6.    Purchase through or as a Procuring Party. If Customer purchases or uses the Services through a Procuring Party, then Customer hereby represents and warrants that Customer has authorized such Procuring Party to apply for, accept, install, maintain, renew and, if necessary, revoke the Services on Customer's behalf. By authorizing a Procuring Party to provide or resell the Services to Customer, Customer hereby affirms its acceptance of this Agreement as it relates to Customer's use of the Services. If Customer is accessing or using the Services on behalf of a business, entity, or individual (as a Procuring Party or otherwise), then: (a) it represents and warrants that (i) it is an authorized representative of such business, entity, or individual, with the authority to bind the business, entity, or individual to this Agreement, and (ii) it will comply with and procure the applicable party's compliance with this Agreement; and (b) such business, entity, or individual is the "Customer" hereunder and is legally and financially responsible for access to and use of the Services as well as for the use of the account by others, including any employees, agents or contractors.

**3.    Fees.**

3.1.    Fees. Customer will pay DigiCert the fees for Services provided hereunder pursuant to the latest pricing posted in the Portal or as set forth in an Order Form. All payments are due and payable either within 30 days of the date of purchase or such other period, if any, stated in an Order Form. Fees payable hereunder are in exchange for the provision of Services by DigiCert and are not a royalty or license fee. If Customer submits funds to its Portal Account that are not connected to an Order Form (i.e., funds not connected to the purchase of Services with a definite term length), Customer may use such funds to purchase Services within 12 months. If Customer fails to use all such funds, any remaining funds will be deemed fees earned by DigiCert for Services provided, and Customer may not use them in connection with any other purchase. If any undisputed invoiced amount is not received by DigiCert by the due date, then without limiting DigiCert's rights or remedies, (a) those charges will accrue late interest at the rate of 1.5% of the outstanding balance per month, or the maximum rate permitted by law, whichever is lower, (b) DigiCert may accelerate Customer's unpaid fee obligations so that they become immediately due and payable, and (c) DigiCert may suspend or limit Customer's  access to the Portal or Services without notice until full payment is made. Customer must notify DigiCert of any fee disputes within 30 days of the applicable invoice date or such invoice will be deemed accepted. If Customer has purchased

the Services through a Procuring Party, the payment terms will be those terms established between Customer and such Procuring Party. If Customer or an applicable Procuring Party does not pay the applicable fees for any Services extended to Customer, then DigiCert may suspend or limit Customer's access to the Portal or Services without notice until full payment is made.

3.2.     Taxes.  DigiCert may charge, and Customer will pay, all applicable federal, state, or local sales or use taxes, value added taxes ("**VAT**"), goods and services taxes ("**GST**"), and consumption taxes that DigiCert is legally obligated to charge ("**Taxes**"). All fees charged by DigiCert are exclusive of any Taxes however imposed, e.g., VAT, GST, or consumption taxes, unless such Taxes are stated on the invoice DigiCert provides to Customer. Customer may provide DigiCert an exemption certificate or equivalent information acceptable to the relevant taxing authority. In such case, DigiCert will not charge or collect the Taxes covered by such exemption certificate. If the tax status of Customer were to change from tax-exempt to taxable during the term of this Agreement, Customer shall notify DigiCert of this change within thirty (30) days. If Customer fails to notify DigiCert, then Customer shall be solely responsible for any unpaid Taxes resulting from fees paid to DigiCert. During the term of this Agreement, DigiCert will provide Customer with forms, documents, or certifications as may be required for Customer to satisfy information reporting or withholding tax obligations with respect to payments under this Agreement. Upon DigiCert's receipt of Customer's proof of legally required withholding (which proof must be acceptable in DigiCert's sole discretion), Customer may only deduct or withhold any Taxes that DigiCert and Customer determine Customer is legally obligated to withhold from any amounts payable to DigiCert under this Agreement. Except as stated in this Section 3.2, Customer may not withhold or offset any amount owed to DigiCert for any reason.

**4.         Intellectual Property Rights; Restrictions.**

4.1.     DigiCert Intellectual Property Rights.  DigiCert and its applicable licensors retain, and Customer will not obtain or claim, any title,  interest, or ownership rights in any of DigiCert's products or services, including all software associated with the Portal, the On-Premises Software, any other Services, or techniques and ideas embedded therein; all updates, improvements, enhancements, modifications, copies or derivative works of such products or services or software provided by DigiCert, regardless of who produced, requested, or suggested the updates, improvements, enhancements, modifications, copies or derivative works; all Documentation and marketing material provided by DigiCert to Customer; and  all of  DigiCert's copyrights, patent rights, trade secret rights and other proprietary rights.

4.2.     Restrictions. Customer will protect DigiCert's intellectual property, and the value, good will, and reputation associated therewith when accessing or using the Services. Customer will not: (i) attempt to interfere with, or disrupt the operations of, the Services or attempt to gain access to any systems or networks that connect thereto, except as required to access and use the Portal (including the Portal API) as permitted hereunder; (ii) re-engineer, reverse engineer, decompile or disassemble any portion of the Services (except that Customer may decompile the On-Premises Software for the purposes of interoperability only to the extent permitted by and subject to strict compliance under applicable law); (iii) use, copy, modify, or create derivative works of the Services for any purpose other than as expressly permitted herein or inconsistent with the uses contemplated in any Documentation; (iv) transfer, sublicense, rent, lease, sublease, lend, distribute or otherwise make available the Services to any third party other than as expressly permitted herein; (v) use the Services in connection with a service bureau, facility management, timeshare, service provider or like activity whereby Customer operates or uses the Services for the benefit of a third party; (vi) replicate, frame or mirror the Services; (vii) remove, erase or tamper with any copyright or other proprietary notice encoded or recorded in the Services; (viii) introduce into the Services any computer virus, malware, software lock or other such harmful program or data which destroys, erases, damages or otherwise disrupts the normal operation of the Services or allows for unauthorized access to the Services ("**Malicious Code**"); (ix) access, or allow another party to access or use, the Services for any benchmarking purposes or to develop or improve a product or service that competes with DigiCert; (x) impersonate or misrepresent Customer's affiliation with any entity; (xi) scan a DigiCert IP address (including through automated means) without obtaining DigiCert's prior written consent; or (xii) encourage or authorize a third party to do any of the foregoing. DigiCert may terminate this Agreement or Customer's Portal Accounts, or restrict Customer's access to the Services, if DigiCert reasonably

believes that Customer is using the Services to post or make accessible any material that infringes DigiCert's or any third party's rights or is in breach of this Agreement. Customer will not use any marketing material or Documentation that refers to DigiCert or its products or services without receiving written prior approval from DigiCert, except as may be set forth in any Service Specific Terms.

4.3.    Feedback. If Customer provides DigiCert with any Feedback related to the Services, DigiCert, in its sole discretion, may or may not respond to Feedback or promise to address any Feedback in the development of future features or functionalities of the Services. In the event DigiCert uses Feedback in any way, Customer hereby grants DigiCert an unrestricted, perpetual, worldwide, exclusive, transferable, irrevocable, sublicensable, royalty-free, fully paid-up license to use, copy, modify, create derivative works of, make, have made, distribute (through multiple tiers of distribution), publicly perform or display, import, export, sell, offer to sell, rent, or license copies of the Feedback as part of or in connection with any DigiCert product, service (including the Services), technology, content, material, specification or Documentation. For the avoidance doubt, Customer will not obtain any title, interest, or ownership right to the Services in connection with any Feedback.

4.4.    Trademark Usage. Customer agrees that DigiCert may use Customer's name and trademark to perform its obligations under this Agreement and to indicate that Customer is receiving DigiCert's Service, provided that such use would not foreseeably diminish or damage Customer's rights in any of its trademarks, create a misrepresentation of the parties' relationship, or diminish or damage a party's reputation. Neither party may register or claim any right in the other party's trademarks. Customer grants DigiCert the right to use any trademark of Customer included in the Certificate to the extent necessary to operate such Certificate.

4.5.    Customer Content. Customer retains all right, title and interest in and to its Customer Content. Customer hereby grants to DigiCert and its Affiliates a worldwide, royalty-free, sublicensable, right and license to host, copy, transmit and display Customer Content as necessary for DigiCert and its Affiliates to provide the Services in accordance with this Agreement.

**5.    Additional Terms Applicable to the Services.**

5.1.    On-Premises Software. If Customer's use of any Service (or component thereof) includes the use of DigiCert's On-Premises Software, then subject to Customer's compliance with this Agreement and any restrictions that DigiCert may impose on where such On-Premises Software can be installed, DigiCert hereby grants to Customer a non-exclusive, non-transferable license to use, reproduce and install a reasonable number of copies of the On-Premises Software on Customer's hardware, equipment or devices, solely in connection with Customer's use of the Services that the On-Premises Software is provided in connection with. Any updates to the On-Premises Software provided by DigiCert at its sole discretion shall be subject to any terms and conditions provided with such updates. If no terms and conditions are provided, then such updates are subject to this Agreement. Any such updates may affect Customer's product and may require Customer to make changes to Customer's product in order to maintain interoperability.

5.2.    Third Party Services. DigiCert may make third-party services and websites ("**Third-Party Services**"), including any separately downloadable or accessible add-on, plug-in, module, command, function, playbook, content, suite or application that extends the features or functionality of the applicable Service, available for download or access as a convenience to its customers. DigiCert makes no promises or guarantees related to any Third-Party Service and will not be liable for any such Third-Party Service. Nothing in this Agreement will be deemed to be a representation or warranty by DigiCert with respect to any Third-Party Service. DigiCert may, in its reasonable discretion, block or disable access to any Third-Party Service at any time without notice or liability. Customer's use of a Third-Party Service is at its own risk and may be subject to additional terms and conditions applicable to that Third-Party Service (such as license terms of the providers of such Third-Party Service). In addition, the On-Premises Software may contain third party software programs that are available under open source or free software licenses, and this Agreement does not alter any rights or obligations Customer may have under those open source or free software licenses and DigiCert makes no promises or guarantees related to such third-party software.

**digicert**

5.3.    Third Party Content. The Services may contain features or functions that enable interoperation with Third-Party Content that Customer, in its sole discretion, chooses to use in connection with a Service. Customer may be required to obtain access to such Third-Party Content from the respective providers, and Customer may be required to grant DigiCert access to Customer's accounts with such providers to the extent necessary for DigiCert to allow the interoperation with the Services. By requesting or allowing DigiCert to enable access to such Third-Party Content in connection with the Services, Customer represents and warrants that it is authorized under the provider's terms to allow such access. If Customer installs or enables (or directs or otherwise authorizes DigiCert to install or enable) Third-Party Content for use with the Services where the interoperation includes access by the third-party provider of Customer Content or Customer's Confidential Information, Customer hereby authorizes DigiCert to allow the provider of such Third-Party Content to access Customer Content or Customer's Confidential Information as necessary for interoperation. Customer agrees that DigiCert is not responsible or liable for disclosure, modification, or deletion of Customer Content resulting from access to Customer Content by such Third-Party Content, nor is DigiCert liable for any damages or downtime that Customer may incur or any impact on Customer's experience of the Services, directly or indirectly, as a result of Customer's use of or reliance on any Third-Party Content, sites or resources.

**6.    Confidentiality.**

6.1.    Definition. **"Confidential Information"** means any information, documentation, system, or process disclosed by a party or a party's Affiliate that is: (i) designated as confidential (or a similar designation) at the time of disclosure; (ii) disclosed in circumstances of confidence; or (iii) understood by the parties, exercising reasonable business judgment, to be confidential.

6.2.    Exclusions. Confidential Information does not include information that: (i) was lawfully known or received by the receiving party prior to disclosure; (ii) is or becomes part of the public domain other than as a result of a breach of this Agreement; (iii) was disclosed to the receiving party by a third party, provided such third party, or any other party from whom such third party receives such information, is not in breach of any confidentiality obligation in respect to such information; or (iv) is independently developed by the receiving party as evidenced by independent written materials.

6.3.    Obligations. Each party will keep confidential all Confidential Information it receives from the other party or its Affiliates. Each party will use disclosed Confidential Information only for the purpose of exercising its rights and fulfilling its obligations under this Agreement and will protect all Confidential Information against disclosure using a reasonable degree of care. Each party may disclose Confidential Information to its contractors if the contractor is contractually obligated to confidentiality provisions that are at least as protective as those contained herein. If a receiving party is compelled by law to disclose Confidential Information of the disclosing party, the receiving party may disclose such Confidential Information that it is advised by its legal counsel is legally required, but only after using reasonable efforts to (i) seek confidential treatment for the Confidential Information, and (ii) send sufficient prior notice to the other party to allow the other party to seek protective or other court orders and reasonably cooperates with such attempts by the other party.

6.4.    Privacy. Customer acknowledges that it must have a lawful basis to provide certain required information (or to cause such information to be provided) relating to an identified or identifiable natural person ("**Personal Data**"), and that Customer must have a lawful basis to provide, or cause to provide, such Personal Data, which is necessary for use of the Services (including the Certificates), and which will be processed and used in accordance with DigiCert's Privacy Policy available at https://www.digicert.com/digicert-privacy-policy (as updated from time to time, the "**Privacy Policy**"). The Privacy Policies applicable to QTSP Services are available at https://www.quovadisglobal.com/privacy/ (as updated from time to time).

**7.    Term and Termination.**

7.1.    Term.  This Agreement is effective upon the Effective Date and will remain in effect unless earlier terminated in accordance with this Agreement.

7.2.    Termination. Either party may terminate this Agreement immediately if the other party: (i) materially breaches this Agreement (including any appendices, addenda, Order Forms, schedules and other terms referenced herein) and fails to remedy the material breach within thirty (30) days after receiving notice of the material breach; (ii) engages in illegal or fraudulent activity in connection with this Agreement (or in the case of termination by DigiCert, Customer engages in an activity that could otherwise materially harm DigiCert's business in connection with this Agreement); (iii) has a receiver, trustee, or liquidator appointed over substantially all of its assets; (iv) has an involuntary bankruptcy proceeding filed against it that is not dismissed within 30 days of filing; or (v) files a voluntary petition of bankruptcy or reorganization.

7.3.    Restrictions on Further Use. Upon expiration or termination of the Agreement: (i) except as otherwise specified, all other rights and licenses granted herein terminate; (ii) each party will immediately discontinue all representations or statements that could imply that a relationship exists between DigiCert and Customer; (iii) each party will continue to comply with the confidentiality requirements in this Agreement; and (iv) Customer will, within 30 days of the date of termination, pay to DigiCert any fees, or part thereof, still owed as of the date of termination and destroy or deliver to DigiCert all sales manuals, price lists, literature and other materials relating to DigiCert.

7.4.    Survival.  The Service Specific Terms, and any applicable sections herein or appendices that specifically state they survive termination of this Agreement, will survive expiration or termination of this Agreement until the applicable Services provided by DigiCert expire or are revoked. In addition, the obligations and representations of the parties under Section 4.1, Section 4.2, Section 4.3, Section 6 (Confidentiality), Section 7 (Termination), Section 8 (Disclaimers of Warranties, Limitation of Liability, and Indemnification), and Section 9 (Miscellaneous) survive expiration or termination of this Agreement. Customer's obligation to pay all amounts owed by Customer to DigiCert survive termination of this Agreement.

**8.    Disclaimer of Warranties, Limitation of Liability, and Indemnification.**

8.1.    Warranties.

(i)    Each party hereto represents and warrants that (a) such party is duly organized and in good standing under the laws of its jurisdiction of organization and in each other jurisdiction where such organization or good standing is required for the performance of this Agreement; (b) such party's entry into and performance under this Agreement has been duly approved by all necessary corporate action and does not violate any constituent instrument of such party; and (c) such party's entry into and performance under this Agreement does not violate any law or regulation, judicial or executive order, or contractual commitment by which such party is bound.

(ii)    Except as may otherwise be stated in any Service Specific Terms, DigiCert represents and warrants solely to Customer: (a) that the Services, when used in accordance with the terms of this Agreement, will function substantially in accordance with the Documentation that may be provided by DigiCert for such Services; and (b) that it will perform any professional services associated with the Services in a good and workmanlike manner and in accordance with generally accepted industry standards.

(iii)    Customer represents and warrants: (a) that Customer is solely responsible for its Customer Content, including without limitation, the security of such Customer Content as it applies to Customer's control of access to such Customer Content via the Services; (b) that Customer has the necessary rights and licenses, consents, permissions, waivers and releases to use its Customer Content and make it available hereunder; and (c) that Customer Content (1) does not violate, misappropriate or infringe any rights of DigiCert or any third party, (2) does not constitute defamation, invasion of privacy or publicity, or otherwise violate any rights of any third party, (3) is not designed for use in any illegal activity or does not promote illegal activities, including, without

limitation, in a manner that might be illegal or harmful to any person or entity; and (4) does not include, distribute, share, or facilitate the distribution of Malicious Code.

8.2.    DISCLAIMERS. OTHER THAN AS PROVIDED IN SECTION 8.1, THE SERVICES, AND ANY RELATED SOFTWARE (INCLUDING THE PORTAL) ARE PROVIDED "AS IS" AND "AS AVAILABLE" AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, DIGICERT DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. DIGICERT DOES NOT WARRANT THAT ANY SERVICE OR PRODUCT WILL MEET CUSTOMER'S EXPECTATIONS OR THAT ACCESS TO THE SERVICES WILL BE TIMELY OR ERROR-FREE. Notwithstanding anything herein to the contrary, DigiCert does not guarantee the accessibility of any products or services and may modify or discontinue offering any product or service offering at any time. Customer's sole remedy for a defect in the Services or a failure of the Services to function in accordance with the Documentation is for DigiCert to use commercially reasonable efforts, upon notice of such defect or failure from Customer, to correct the defect or failure, except that DigiCert has no obligation to correct defects or failures that arise from (i) misuse, modification or damage of the Services, (ii) combination of the Services with other products and services by parties other than DigiCert or with any software or hardware not supported by DigiCert, (iii) causes external to the Services, such as problems with the hardware, network or other infrastructure with which the Services are used, or (iv) Customer's breach of any provision of this Agreement.

8.3.    Limitation of Liability. This Agreement does not limit a party's liability for: (i) death or personal injury resulting from the negligence of a party; (ii) gross negligence or willful misconduct, or (iii) fraud or fraudulent statements made by a party to the other party in connection with this Agreement. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY OR LIMITATION OF LIABILITY: (A) DIGICERT AND ITS AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS (THE "**DIGICERT ENTITIES**") WILL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES (INCLUDING ANY DAMAGES ARISING FROM LOSS OF USE, LOSS OF DATA, LOST PROFITS, BUSINESS INTERRUPTION, OR COSTS OF PROCURING SUBSTITUTE SOFTWARE OR SERVICES) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SUBJECT MATTER HEREOF; AND (B) THE DIGICERT ENTITIES' TOTAL CUMULATIVE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SUBJECT MATTER HEREOF WILL NOT EXCEED THE AMOUNTS PAID BY CUSTOMER TO DIGICERT IN THE TWELVE MONTHS PRIOR TO THE EVENT GIVING RISE TO SUCH LIABILITY, REGARDLESS OF WHETHER SUCH LIABILITY ARISES FROM CONTRACT, INDEMNIFICATION, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, AND REGARDLESS OF WHETHER DIGICERT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. NO CLAIM, REGARDLESS OF FORM, WHICH IN ANY WAY ARISES OUT OF THIS AGREEMENT, MAY BE MADE OR BROUGHT BY CUSTOMER OR CUSTOMER'S REPRESENTATIVES MORE THAN ONE (1) YEAR AFTER THE BASIS FOR THE CLAIM BECOMES KNOWN TO CUSTOMER.

8.4.    DigiCert Indemnity. DigiCert will defend Customer and its permitted Affiliates that use the Services hereunder (each a "**Customer Indemnified Party**") from and against all third party claims and all related liabilities, damages, and costs, including reasonable attorneys' fees, arising from a claim that the use of the Services as permitted under this Agreement infringes or misappropriates a third party's copyright, patent or trademark rights in the United States, and will indemnify a Customer Indemnified Party for all reasonable attorney's fees incurred and damages and other costs finally awarded against such Customer Indemnified Party in connection with or as a result of any such claim; provided, however, that DigiCert will have no liability or obligation under this section if the claim arises from (a) Customer Content; (b) the use or combination of the Services with any other software or hardware not supported by DigiCert; (c) causes external to the Services, such as problems with the hardware, network or other infrastructure with which the Services are used; (d) unauthorized or improper use of the Services; or (e) any modification of the Services by anyone other than DigiCert. Should the Service become or, in DigiCert's reasonable opinion is likely to become, the subject of any third-party claim of infringement, DigiCert may, at its option and expense, either (x) procure for Customer the right for DigiCert to continue to offer the Services as contemplated by this Agreement; (y) replace or modify the Services to make its use in accordance with this Agreement non-infringing; or (z) with thirty (30) days' notice to Customer, terminate this Agreement and refund to Customer any pre-paid, unused fees covering the

remainder of the term after the effective date of termination. This section states DigiCert's sole liability with respect to, and Customer's exclusive remedy against DigiCert or its Affiliates, for any claim that the use of the Services as permitted under this Agreement infringes or misappropriates a third party's intellectual property rights.

8.5.    Customer Indemnity. Customer will indemnify, defend and hold harmless DigiCert and DigiCert's employees, officers, directors, shareholders, Affiliates, and assigns (each a "DigiCert Indemnified Party", and together with the Customer Indemnified Parties, the "Indemnified Parties") from and against all third party claims and all related liabilities, damages, and costs, including reasonable attorneys' fees, arising from (a) Customer's breach of this Agreement; (b) Customer's online properties for which DigiCert provides Services hereunder, or the technology or content embodied therein or made available through such properties; (c) DigiCert's access or use in compliance with this Agreement of any Customer Content or any other information, systems, data or materials provided by or on behalf of Customer to DigiCert hereunder, (d) Customer's failure to protect the authentication mechanisms used to secure the Portal or a Portal Account; (e) Customer's modification of a DigiCert product or service or combination of a DigiCert product or service with any product or service not provided by DigiCert; (f) an allegation that personal injury or property damage was caused by the fault or negligence of Customer; (g) Customer's failure to disclose a material fact related to the use or issuance of the Services; or (h) an allegation that the Customer, or an agent of Customer, used DigiCert's Services to infringe on the rights of a third party.

8.6.    Indemnity Obligations.  An Indemnified Party seeking indemnification under this Agreement must notify the indemnifying party promptly of any event requiring indemnification.  However, an Indemnified Party's failure to  notify will not relieve the indemnifying party from its indemnification obligations, except to the extent that the failure to   notify materially prejudices the indemnifying party. The indemnifying party may assume the defense of any proceeding requiring   indemnification unless assuming the defense would result in potential conflicting interests as determined by   the Indemnified Party in good faith.  An Indemnified Party may, at the indemnifying party's expense, defend itself until  the indemnifying party's counsel has initiated a defense of the Indemnified Party.  Even after the indemnifying party assumes the   defense, the Indemnified Party may participate in any proceeding using counsel of its own choice and at its   own expense.  The indemnifying party may not settle any proceeding related to this Agreement unless the settlement also   includes an unconditional release of liability for all Indemnified Parties. The indemnifying party's indemnification obligations hereunder are not an Indemnified Party's sole remedy for events giving rise to indemnity by the indemnifying party hereunder and are in addition to any other remedies an Indemnified Party may have against the indemnifying party under this Agreement.

8.7.    Injunctive Relief. Customer acknowledges that its breach of this Agreement may result in irreparable harm to DigiCert that cannot adequately be redressed by damages. Accordingly, in addition to any other legal remedies which may be available, DigiCert may seek and obtain an injunctive order against a breach or threatened breach of this Agreement by Customer, and without a need to post a bond or similar action.

8.8.    Extent.  The limitations and obligations in this section apply to the maximum extent permitted by law and   apply regardless of: (i) the reason for or nature of the liability, including tort claims; (ii) the number of claims   of liability; (iii) the extent or nature of the damages; or (iv) whether any other provisions of this Agreement   were breached or proven ineffective.

**9.      Miscellaneous**.

9.1.    Force Majeure. Except for Customer's payment obligations, neither party is liable for any failure or delay in  performing its obligations under this Agreement to the extent that the circumstances causing such failure or delay are beyond a party's reasonable control. Customer acknowledges that the Services (including the Portal and Certificates) are subject to the operation and telecommunication infrastructures of the Internet and the operation of   Customer's Internet connection services, all of which are beyond DigiCert's control.

9.2.     Entire Agreement.  This Agreement, along with all documents referred to herein, including any applicable Order Form, constitutes the entire agreement between the parties with respect to the subject matter, superseding all other prior agreements that might exist.  The Services are provided only upon the terms and conditions of this Agreement and the Service Specific Terms, and this Agreement prevails over any conflicting, additional, or different terms and conditions proposed by Customer in any other documentation. Any terms and conditions contained in any purchase order, click-through agreement, or other documentation issued by Customer, before or after the Effective Date, and that may require affirmative acceptance of such terms and conditions by DigiCert as part of a vendor set-up process or otherwise, are expressly rejected and will have no effect. Except as otherwise allowed herein, neither party may amend this Agreement unless the amendment is in writing and signed by the parties. In the event of an inconsistency between documents, the following order of precedence will apply: (1) this Agreement, (2) Service Specific Terms; (3) other applicable appendices, addenda, and schedules, and (4) Order Forms, unless the Order Form expressly states that it will take precedence.

9.3.     Amendment. DigiCert may amend: (i) the Service Specific Terms; (ii) the Privacy Policy; and (iii) any other applicable appendices, addenda and schedules (but for clarity not an Order Form) at any time and will give notice of any material changes via the Portal, by posting the amended version to the Legal Repository, or by a means set forth in Section 9.7. If such an amendment materially and adversely affects Customer's rights herein, Customer will have the right, as its sole and exclusive remedy in connection with such amendment, to terminate this Agreement during the 30-day period after DigiCert's notice of such amendment, by providing written notice of termination to DigiCert. Customer's continued use of the Services after 30 days of DigiCert's notice of the amendment constitutes Customer's acceptance of the amendment.

9.4.     Waiver. A party's failure to enforce or delay in enforcing a provision of this Agreement does not waive the party's right to enforce the same provision later or the party's right to enforce any other provision of this Agreement. A waiver is only effective if in writing and signed by both parties.

9.5.     Assignment. Customer may not assign or delegate any of its rights or obligations under this Agreement without the prior written consent of DigiCert.  DigiCert may assign or delegate any of its rights and obligations under this Agreement without Customer's consent. Any purported assignment or delegation in violation of this Agreement is null and void.

9.6.     Relationship. DigiCert and Customer are independent contractors and not agents or employees of each other. Neither party has the power to bind or obligate the other or to make any statements, representations, warranties or commitments on behalf of the other party. Each party is responsible for its own expenses and employees. All persons employed by a party will be employees of such party and not of the other party and all costs and obligations incurred by reason of any such employment will be for the account and expense of such party.

9.7.     Notices.  DigiCert will send notices of early termination or breach of this Agreement to Customer by first class mail to the address listed in the Portal Account, which notices are effective upon receipt. DigiCert will send all other notices (or if no physical address is provided by Customer, then DigiCert will send all notices hereunder including notices of early termination or breach of this Agreement) by posting the notice in the Portal Account or by email via the email address of Customer's administrator in the Portal Account (or other alternate email address associated with the Portal Account if provided), or by regular mail. All such notices are effective when posted in the Portal or when sent to the Portal Account. It is Customer's responsibility to keep its email address current. Customer will be deemed to have received any email sent to the email address then associated with the Portal Account when DigiCert sends the email, regardless of whether Customer receives the email. Customer will send DigiCert notices in writing by postal mail that is addressed to DigiCert, Inc., Attn: General Counsel, 2801 North Thanksgiving Way, Suite 500, Lehi, Utah 84043. Notices from Customer are effective upon receipt. DigiCert may change its address for notice either by providing written (including email) notice to Customer or by publishing a new address for notice through the Portal.

**digicert**

9.8.     <u>Governing Law and Jurisdiction</u>.  The (i) laws that govern the interpretation, construction, and enforcement of this Agreement and all matters, claims or disputes related to it, including tort claims, and (ii) the courts or arbitration bodies that have exclusive jurisdiction over any of the matters, claims or disputes contemplated in sub-section (i) above, will each depend on where Customer is domiciled, as set forth in the table below; <u>provided</u>, <u>for clarity</u>, that rights and obligations arising from applicable local laws continue to be governed by such laws, including with respect to EU Regulation 910/2014 (eIDAS), the General Data Protection Regulation (GDPR), and trade compliance laws. In instances where the International Chamber of Commerce is designated below as the court or arbitration body with exclusive jurisdiction of such matters, claims or disputes, then the parties hereby agree that (x) all matters, claims or disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce ("**Rules**") by one or more arbitrators appointed in accordance with the Rules, (y) judgment on the award rendered by such arbitration may be entered in any court having jurisdiction, and (z) this arbitration clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

| **Customer is Domiciled in or the Services are:** | **Governing Law is laws of:** | **Court or arbitration body with exclusive jurisdiction:** |
|---|---|---|
| The United States of America, Canada, Mexico, Central America, South America, the Caribbean, or any other country not otherwise included in the rest of the table below | Utah state law and United States federal law | State and Federal courts located in Salt Lake County, Utah |
| Europe, the United Kingdom, Switzerland, Russia, the Middle East or Africa | England | International Chamber of Commerce, International Court of Arbitration, with seat of arbitration in London |
| Japan | Japan | International Chamber of Commerce, International Court of Arbitration, with seat of arbitration in Tokyo |
| Australia or New Zealand | Australia | International Chamber of Commerce, International Court of Arbitration, with seat of arbitration in Melbourne |
| A Country in Asia or the Pacific region, other than Japan, Australia or New Zealand | Singapore | International Chamber of Commerce, International Court of Arbitration, with seat of arbitration in Singapore |
| PKIoverheid Certificates | The Netherlands | International Chamber of Commerce, International Court of Arbitration, with seat of arbitration in Amsterdam |

9.9.     <u>Dispute Resolution</u>. To the extent permitted by law, before Customer files suit or initiates an arbitration claim with respect to a dispute involving any aspect of this Agreement, Customer shall notify DigiCert, and any other party to the dispute for the purpose of seeking business resolution. Both Customer and DigiCert shall make good faith efforts to resolve such dispute via business discussions. If the dispute is not resolved within sixty (60) days after the initial notice, then a party may proceed as permitted under applicable law and as specified under this Agreement.

(i)          <u>Arbitration</u>. In the event a dispute is allowed or required under this agreement to be resolved through arbitration, the parties will maintain the confidential nature of the existence, content, or results of any

arbitration hereunder, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial confirmation or challenge to an arbitration award or its enforcement, or unless otherwise required by law or judicial decision.

(ii)     Class Action and Jury Trial Waiver. THE PARTIES EXPRESSLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL FOR THE PURPOSES OF LITIGATING DISPUTES HEREUNDER. Each party agrees that any dispute must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("**Class Action**"). The parties expressly waive any ability to maintain any Class Action in any forum in connection with any dispute. If the dispute is subject to arbitration, the arbitrator will not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

9.10.    Compliance with Law. Each party will comply with all applicable laws, including federal, state and local laws and regulations in connection with its performance under this Agreement. Customer acknowledges that Services provided or offered under this Agreement may be subject to, and Customer agrees to comply with all applicable laws in connection with its use of the Services, including all applicable export controls, trade sanctions, and physical or electronic import laws, advertising laws, privacy laws, regulations, and rules. DigiCert may suspend performance of any of its obligations under the Agreement, without any prior notice or cure period and without any liability, if Customer fails to comply with this provision. Customer acknowledges that it is not located in or a national of Cuba, North Korea, Iran, Syria or the Crimea, Donetsk People's Republic or Luhansk People's Republic Region of Ukraine or any other country or region subject to comprehensive U.S. economic sanctions or on any United States Government list or other government list of prohibited or restricted parties for export control or economic sanctions purposes (including lists published by the U.S. Government, European Union or the United Nations).

9.11.    Export Regulation. Customer acknowledges that the On-Premises Software and related technical data and services (collectively "**Controlled Technology**") are subject to the import and export laws of the United States, specifically the U.S. Export Administration Regulations (EAR), and the laws of any country where Controlled Technology is imported or re-exported. The export or re-export of the On-Premises Software in violation of the foregoing laws and regulations is strictly prohibited. The On-Premises Software may be subject to import, distribution, transfer, or use restrictions for which Customer is solely responsible. The On-Premises Software is prohibited from export or re-export to Cuba, North Korea, Iran, Syria, the Crimea, Donetsk People's Republic, or Luhansk People's Republic Region of Ukraine, or to any other country or region subject to comprehensive U.S. economic sanctions or export embargo. Customer shall not, directly or indirectly, facilitate giving a country, entity or individual sanctioned under U.S. law access to the On-Premises Software. Customer may not export the On-Premises Software in connection with the use or development of missiles or chemical, biological, and nuclear weapons. Customer may not export the On-Premises Software to any military entity, or to any other entity for a military purpose, unless subject to a valid license or license exception.

9.12.    US Government Restricted Rights. The On-Premises Software and any other software elements of the Services is provided with "Restricted Rights", use, duplication or disclosure thereof by the U.S. Government is subject to restrictions as set forth in subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clause at DFARS 252.227-7013 or subparagraphs (c)(1) and (2) of the Commercial Computer Software - Restricted Rights at 48 CFR 52.227- 19, as applicable (and the successor clauses to any of the foregoing). The contractor/manufacturer is DigiCert, Inc. All On-Premises Software and other software elements of the Services provided to the U.S. Government, including its civilian and military agencies, is commercial computer software that was developed at private expense prior to its provision to any U.S. Government entity. Subject to any applicable regulations set out in the FAR or DFARS (and any superseding regulations), the On-Premises Software and other software elements of the Services is provided with the commercial license rights and restrictions described elsewhere in the Agreement. For Department of Defense agencies, the restrictions set forth in the Technical Data - Commercial Items clause at DFARS 252.227-7015 (Nov 1995) shall also apply.

9.13.   <u>Severability</u>. The invalidity or unenforceability of any provision of this Agreement, as determined by a court or administrative body of competent jurisdiction, will not affect the validity or enforceability of the remainder of this Agreement, and the provision affected will be construed so as to be enforceable to the maximum extent permissible by law.

9.14.   <u>Rights of Third Parties</u>. Except as stated in the Service Specific Terms or Section 2.4, no third parties have any rights or remedies under this Agreement.

9.15.   <u>Interpretation</u>. The definitive version of this Agreement is written in English. If this Agreement is translated into another language and there is a conflict between the English version and the translated version, the English language version controls.